*945 OPINION

Per Curiam:

FACTS

Respondent Mary Jane Jordan (“Jordan”) and appellant Adele Perry (“Perry”) were close friends and neighbors. Perry was a successful, well-educated businessperson whom Jordan admired. Jordan had an eighth-grade education. During the course of their friendship, Jordan confided in Perry about her concern for the futures of her two teenage daughters. She wished to find a means of providing for their support. Perry, in turn, told Jordan that she wanted to sell her clothing store, the Adele Perry Boutique, because in a few years Perry would be moving back East with her son, who would be attending school. Jordan decided to buy the clothing store with the intent to provide jobs for her daughters. Perry knew of Jordan’s intent.
Perry sold the clothing store to Jordan for $440,000.00. Perry drafted the purchase agreement. Jordan did not read the agreement, nor did she make any suggestions or amendments. Jordan testified that she relied upon Perry, that Perry was “like a sister.” Jordan paid Perry the entire sale price in cash. Jordan trusted Perry’s business judgment and never negotiated over the price. Perry did not inform Jordan that Perry listed the clothing store for sale with a business broker a few months earlier for $340,000.00. Jordan also paid an additional $5,000.00 for a computer which was apparently already owned by the clothing store.
Jordan did not examine the financial records of the clothing store before the sale. Jordan accepted Perry’s representation that she “took out” $5,000.00 in revenues every month for her personal use. Jordan testified that she told Perry that she was “desperately” relying on Perry to make the business successful. Perry assured Jordan that she would continue to run the business successfully because Perry’s name “was still on the store.” Perry knew that Jordan’s daughters would not be able to run the clothing store for a few years because they were inexperienced and one was still attending high school. Jordan testified that Perry also knew Jordan had no experience, ability, or interest in managing the clothing store herself. In fact, Jordan had severe allergies and chemical sensitivities preventing her from staying in clothing stores for any length of time and requiring her to leave Reno during the winter.
Presumably for these reasons, Perry entered into a management contract with Jordan, which Jordan said required Perry to *946 continue managing the clothing store and to train Jordan’s daughters. In fact, the purchase agreement required Jordan to “enter into a one (1) year management contract with Seller [Perry] for FIVE THOUSAND DOLLARS ($5,000.00) per month.” When one employee learned that Perry sold the business to Jordan, Perry reassured the employee that nothing was going to change because Perry had secured a management contract for a year. Jordan and Perry allegedly arrived at the $5,000.00 figure because it was how much Perry said she was making every month on her own. Jordan testified that she never contemplated that this agreement needed to be placed in writing.
Jordan alleged that Perry was fully authorized to do whatever was necessary to manage the clothing store. In fact, after selling the clothing store to Jordan, Perry negotiated a new lease, signing on behalf of the clothing store as “President.” Whenever Perry needed money for the store, the bookkeeper, Perry’s mother, obtained it from Jordan. However, Perry quickly lost interest in managing the clothing store and abandoned Jordan in early 1989, despite the fact that Jordan paid Perry her monthly $5,000 salary from October 1988 through March 1989. Jordan testified that she spent between $10,000.00 and $15,000.00 every month to keep the clothing store going. Jordan sued Perry when Jordan finally closed the clothing store in April 1989. A jury found that Perry had breached a confidential relationship, the implied covenant of good faith and fair dealing, and her contract to continue managing the clothing store. The jury awarded Jordan $105,000.00 in damages.
Perry appeals, arguing that (1) the district court erred in submitting a claim for breach of confidential relationship to the jury, (2) the district court erred in denying Perry’s motion for judgment notwithstanding the verdict, and (3) the award of damages was not supported by the evidence. We affirm the district court judgment for the following reasons.

DISCUSSION

Perry argues that no Nevada authority, or authority from any other jurisdiction, recognizes an independent claim for breach of a confidential relationship. We disagree. In Long v. Towne, 98 Nev. 11, 13, 639 P.2d 528, 529-30 (1982), this court stated that
[constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others or to violate confidence. Constructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential *947 relationship. A “confidential or fiduciary relationship” exists when one reposes a special confidence in another so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.
(Citations omitted.) Recently this court indicated that “[t]he duty to speak does not necessarily depend on the existence of a fiduciary relationship. ‘* * * It may arise in any situation where one party imposes confidence in the other because of that person’s position, and the other party knows of this confidence. * * *’ ” Mackintosh v. Jack Matthews & Co., 109 Nev. 628, 635, 855 P.2d 549, 553 (1993) (quoting Central States Stamping Co. v. Terminal Equipment Co., 727 F.2d 1405, 1409 (6th Cir. 1984) (emphasis added).
Persuasive authority suggests that a confidential relationship may arise by reason of kinship or professional, business, or social relationships between the parties. See In re Guardianship of Chandos, 504 P.2d 524, 526 (Ariz. Ct. App. 1972). Such a relationship “exists when one party gains the confidence of the other and purports to act or advise with the other’s interests in mind; it may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship.” Kudokas v. Balkus, 103 Cal. Rptr. 318, 321 (Ct. App. 1972). When a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party. See Hamberg v. Barsky, 50 A.2d 345, 347 (Pa. 1947). We conclude that the record contains ample evidence of the existence and breach of just such a relationship between Perry and Jordan.
We also conclude that the district court did not err in refusing to grant Perry’s motion for judgment notwithstanding the verdict. Construing the verdict in a light most favorable to Jordan, see Dudley v. Prima, 84 Nev. 549, 551, 445 P.2d 31, 32 (1968), we reviewed substantial evidence of the breach of an enforceable management contract, the implied covenant of good faith and fair dealing, and a confidential relationship. We have already discussed the basis of an action for breach of a confidential relationship. With respect to breach of the management contract, the jury reasonably inferred that Perry agreed to manage the clothing store and that Jordan was neither obligated nor able to participate in day-to-day operations. Perry obviously received $5,000.00 *948 monthly to do something, and the jury chose to believe testimony indicating that Jordan never replaced Perry with another manager. Perry simply abandoned the clothing store.
With respect to the covenant of good faith and fair dealing, we have stated that “[wjhen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith.” Hilton Hotels v. Butch Lewis Productions, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991). Reasonable expectations are to be “determined by the various factors and special circumstances that shape these expectations.” Id. at 234, 808 P.2d at 924. Substantial evidence indicates that Jordan reasonably expected Perry to manage the clothing store. The factors and special circumstances in the case before us indicate that Jordan held a reasonable expectation in the continued success of the clothing store under Perry’s management.
Finally, we conclude that the jury award was within a range justified by Jordan’s claims. Damages need not be determined with mathematical certainty. See Bader v. Cerri, 96 Nev. 352, 357, 609 P.2d 314, 318 (1980). The costs Jordan incurred in paying Perry’s salary constitute reliance damages recoverable when Perry failed to perform. Furthermore, costs incurred in covering monthly operating losses could be attributed to Perry’s breach and labeled consequential damages which, combined with other damages, total nearly $100,000.00 at the very least. Indeed, because Jordan paid for the clothing store in cash, it is possible that the jury could have awarded a much greater amount. We also note that Jordan was entitled to recover any losses resulting from a breach of the implied covenant of good faith and fair dealing as well. See Hilton, 107 Nev. at 233-34, 808 P.2d at 923-24. Recovery of this amount under these theories of liability compensates Jordan for her loss (that is, sums Jordan paid), not strictly for the benefit conferred upon Perry. Jordan’s recovery was not, therefore, restitutional in nature.
In addition, the jury was entitled to draw all reasonable inferences from the evidence to determine that Jordan trusted Perry to establish an appropriate sale price for the clothing store. Although it is true that Jordan does not allege fraud, Perry held a duty to act with the utmost good faith, based on her confidential relationship with Jordan. This duty requires affirmative disclosure and avoidance of self dealing. See Northern Nev. Mobile *949 Home v. Penrod, 96 Nev. 394, 398, 610 P.2d 724, 727 (1980). We conclude that the jury could have reasonably inferred that Perry’s previous attempt to sell the clothing store at a significantly lower price should have been affirmatively disclosed, and that sale at a higher price constituted self dealing. The jury could have therefore awarded the $100,000.00 difference in sale price and an additional $5,000.00 for the computer which Jordan purchased twice.

CONCLUSION

We conclude that the district court properly submitted a claim for breach of confidential relationship to the jury. We also conclude that substantial evidence supports the jury’s findings. The resulting award can be justified under several theories of recovery. For these reasons, we affirm the district court judgment.