**Jowel LAGUERRE, Plaintiff,**

v.

**NEVADA SYSTEM OF HIGHER EDUCATION, a State entity; Maria Sheehan, an individual, Defendants.**

**No. 3:10–CV–452–ECR–VPC.**

United States District Court,
D. Nevada,
Reno, Nevada.

Aug. 5, 2011.

U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Jeffrey A. Dickerson, Attorney at Law, Reno, NV, for Plaintiff.

John Albrecht, Truckee Meadows Community College Office of the President, Reno, NV, for Defendants.

### *Order*

EDWARD C. REED, District Judge.

Plaintiff in this case is Jowell Laguerre, the former Vice–President of Academic Affairs at Truckee Meadows Community College ("TMCC"). Defendants are Nevada System of Higher Education ("NSHE"), Plaintiff's former employer, and Maria Sheehan ("Sheehan"), an individual.

Now pending is Defendants' motion (# 18) to dismiss Plaintiff's second amended complaint (# 17). Plaintiff has opposed (# 19) and Defendants have replied (# 21). The motion is ripe, and we now rule on it.

### *I. Factual and Procedural Background*

Plaintiff was formerly employed by NSHE as Vice President of Academic Affairs at TMCC. Plaintiff is "African–American, foreignborn and black." (Sec. Am. Compl. ¶ 9 (# 17).) In 2009, "all employees were offered a severance package of one year's worth of pay plus vacation." (*Id.* ¶ 2) "Plaintiff was eligible and accepted." (*Id.*) Plaintiff alleges that, as a result, a contract between himself and TMCC was formed. The alleged contract "contained no prohibition against accepting future em-

ployment" and "Plaintiff obtained future employment." (*Id.*) In addressing this dispute, the General Counsel for TMCC, representing that he had full authority of the president of TMCC, offered Plaintiff the sum of $65,000 in lieu of a severance package, which Plaintiff claims formed a contract. (*Id.* ¶ 3) Subsequently, TMCC "required Plaintiff to leave early in order to receive the benefit of the contract. Plaintiff complained. Defendant refused to perform under the contract...." (*Id.* ¶ 4.) Plaintiff "attempted to grieve these breaches to the Chancellor, who deferred to the TMCC President." (*Id.* ¶ 6.)

Plaintiff also alleges that NSHE denied him emeritus status after nearly seven years of employment, and that others similarly situated who are not "African American, foreign born and black" did receive emeritus. (*Id.* ¶ 7.) In addition, Plaintiff alleges that "another similarly situated to Plaintiff who was not African–American, foreign-born and black received severance despite having future employment and others who obtained settlements were not required to leave early." (*Id.* ¶ 8.)

On June 23, 2010, Plaintiff filed a complaint in state court. On July 21, 2010, Defendants removed (# 1) the action to federal court, invoking our federal question jurisdiction. On August 16, 2010, Defendants filed a motion to dismiss (# 6). On August 17, 2010, Plaintiff filed an amended complaint (# 7). On September 3, 2010, Defendants filed a motion to dismiss (# 8) the amended complaint. Plaintiff opposed the motion and Defendants replied. On December 10, 2010, 2010 WL 5186794, this Court issued an order (# 16) denying Defendants' motion (# 6) to dismiss the complaint as moot and granting in part and denying in part Defendants' motion (# 8) to dismiss Plaintiff's amended complaint (# 7). On December 28, 2010, Plaintiff filed a second amended complaint (# 17). On January 13, 2011, Defendants filed a motion (# 18) to dismiss the second amended complaint. Plaintiff opposed (# 19) and Defendants replied (# 21). The motion is ripe, and we now rule on it.

## II. Motion to Dismiss Standard

Courts engage in a two-step analysis in ruling on a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). First, courts accept only non-conclusory allegations as true. *Iqbal,* 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Federal Rule of Civil Procedure 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. The Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.,* 579 F.3d 943, 949 (9th Cir.2009).

After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint "states a plausible claim for relief." *Iqbal,* 129 S.Ct. at 1949. (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that "pleads facts that are 'merely consistent with' a defendant's liability ...'

stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

Review on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is normally limited to the complaint itself. See *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. FED.R.CIV.P. 12(d); see *United States v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie,* 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." *Lee,* 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie,* 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed.R.Evid. 201, a court may judicially notice them in deciding a motion to dismiss. *Id.* at 909; see Fed.R.Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Analysis

Plaintiff's second amended complaint (# 17) asserts four claims for relief. Defendants challenge Plaintiff's first, second and fourth claims for relief. Defendants also claim that Plaintiff's second amended complaint (# 17) should be dismissed because Plaintiff has failed to pay Defendants' costs in a prior state court action. (Sec. Am. Compl. at 15 (# 18).) We will examine each claim in turn.

### A. First Cause of Action: Breach of Contract

■ To succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages. *See Bernard v. Rockhill Dev. Co.,* 103 Nev. 132, 734 P.2d 1238, 1240 (1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.") (quoting *Malone v. Univ. of Kan. Med. Ctr.,* 220 Kan. 371, 552 P.2d 885, 888 (1976)).

■ "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson,* 121 Nev. 668, 119 P.3d 1254, 1256 (2005). With respect to contract formation, "preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms." *Id.* "[T]o enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain." *Spellman v. Dixon,* 256 Cal.App.2d 1, 63 Cal.Rptr. 668, 670 (1967). In order to be sufficiently definite, the parties must have agreed to all material terms of a contract. *Chung v. Atwell,* 103 Nev. 482, 745 P.2d 370, 371 (1987). "In determining

whether a contract or its terms are definite, an important consideration is whether the court can determine [the putative contract's] exact meaning and fix the legal liability of the parties." *Id.* (internal quotation marks omitted) (alteration in original)

Plaintiff alleges that NSHE breached a contract between himself and NSHE regarding severance with respect to the payment of $65,000. Defendants contend that the alleged verbal agreement with respect to the payment of $65,000 is not a contract because the Nevada System of Higher Education Code (the "NSHE Code") requires that all employment contracts be in writing. (MTD at 3 (# 18).)

In our order (# 16) dated December 10, 2010, we found that Plaintiff's allegations with respect to the alleged contract for payment of $65,000 in lieu of a severance package are insufficient to support the existence of a contract. As in his first amended complaint (# 7), Plaintiff merely asserts the existence of a contract involving $65,000 without alleging facts that would permit an inference of contract formation. Plaintiff's first cause of action for breach of contract will therefore be dismissed.

### B. Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's second claim requests tort damages for breach of the implied covenant of good faith and fair dealing. An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law. *Consol. Generator–Nevada, Inc. v. Cummins Engine Co., Inc.,* 114 Nev. 1304, 971 P.2d 1251, 1256 (1998). To plead this tort, the plaintiff must allege that: (i) the plaintiff and the defendant were parties to the agreement; (ii) the defendant owed a duty of good faith to the plaintiff; (iii) the defendant breached that

duty by performing in a manner that was unfaithful to the purpose of the contract; and (iv) the plaintiff's justified expectations were denied. *Perry v. Jordan,* 111 Nev. 943, 900 P.2d 335, 337 (1995).

In our order (# 16) dated December 10, 2010, we found that Plaintiff had not shown that NSHE performed a contract in a manner that was unfaithful to the contract's purposes. Plaintiff alleges no new facts in his second amended complaint (# 17) indicating that NSHE performed any contract in a manner that was unfaithful to that contract's purpose. Plaintiff's second claim will therefore be dismissed on that basis.

### C. Fourth Cause of Action: First Amendment

Plaintiff's fourth claim alleges a violation of his First Amendment rights. This claim appears to only apply to Defendant Sheehan. Specifically, Plaintiff alleges that "Defendant Sheehan punished Plaintiff for complaining about official misconduct by ratifying the foregoing breaches." (Sec. Am. Compl. ¶ 25 (# 17).) Plaintiff also suggests that he may have grieved TMCC's actions with respect to other employees as well as himself: "Plaintiff pointed out the refusals of public officials in a public agency to follow through on their agreements with employees." (*Id.*)

The First Amendment prohibits state retaliation against a public employee for speech made as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Analysis of a First Amendment retaliation claim against a government employer involves a sequential five-step series of questions: (i) whether the plaintiff spoke on a matter of public concern; (ii) whether the plaintiff spoke as a private citizen or public employee; (iii) whether the plaintiff's protected speech

was a substantial or motivating factor in the adverse employment action; (iv) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (v) whether the state would have taken the adverse employment action even absent the protected speech. *Desrochers v. City of San Bernardino,* 572 F.3d 703, 708–709 (9th Cir.2009).

Defendants challenge Plaintiff's fourth claim on the bases that the speech at issue (i) occurred after the adverse employment action was taken; (ii) was not protected by the First Amendment because Plaintiff was a policymaker or confidential employee; or (iii) that Defendant Sheehan should be granted qualified immunity with respect to Plaintiff's First Amendment claim. (Sec. Am. Compl. at 9–10 (# 18).)

### i. Timing of the Adverse Employment Action

 Defendants claim, first, that protected speech spoken after the adverse employment action cannot be a substantial or motivating factor in the decision to take the employment action. *Brown v. State,* 679 F.Supp.2d 1188, 1198 (D.Ha.2009); *Eiden v. McCarthy,* 531 F.Supp.2d 333, 352 (D.Conn.2008). Plaintiff alleges that (i) the contract to pay Plaintiff $65,000 was breached; (ii) Plaintiff complained; and (iii) thereafter, Defendant Sheehan had the opportunity to comply with the $65,000 contract, but instead ratified the breach. (Resp. to MTD at 3 (# 19).) The theory of ratification is available in section 1983 lawsuits to hold a municipality liable for a constitutional violation when an authorized policymaker approves a subordinate's decision and the basis for it. *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir.2004). The Ninth Circuit Court of Appeals has recognized that the theory of ratification may be utilized in alleging a First Amendment claim. *See, e.g., Larez v. Los Angeles,* 946 F.2d 630 (9th Cir.1991). Viewing the facts in

the light most favorable to Plaintiff, we find that Plaintiff has stated a plausible claim for relief for retaliation based on a theory of ratification under the First Amendment with respect to the timing of Plaintiff's claim.

### ii. Plaintiff's Status as a Policymaker or Confidential Employee

Defendants alternatively challenge Plaintiff's First Amendment claim by alleging that in his role as Vice President for Academic Affairs, Plaintiff was a policymaker or confidential employee who is not entitled to First Amendment protection. (MTD at 10 (# 18).)

 The fourth element of a First Amendment claim is whether the state had an adequate justification for treating the employee differently from other members of the general public. Additionally, a threshold inquiry in a claim for First Amendment retaliation is whether the employee was a policymaking or confidential employee. In *Walker v. City of Lakewood,* the Ninth Circuit held that "an employee's status as a policymaking or confidential employee [is] dispositive of any First Amendment retaliation claim." 272 F.3d 1114, 1131 (9th Cir.2001) (quoting *Biggs v. Best, Best, & Krieger,* 189 F.3d 989, 994–95 (9th Cir.1999)). Whether an employee is a policymaking or confidential employee is a mixed question of law and fact. *Id.* This is because "determining the particular duties of a position is a factual question, while determining whether those duties ultimately make that position a policymaking or confidential question is a question of law." *Hobler v. Brueher,* 325 F.3d 1145, 1150 (9th Cir.2003) (citing *Walker,* 272 F.3d at 1131).

The question of whether the policymaker exception applies "is properly determined by summary judgment or occasionally a motion to dismiss rather than a trial,

at least where the duties of the position, insofar as they are material, are not genuinely at issue." *Id.* at 1150–51. In fact, where the material duties of a position are not at issue, "the question of 'whether these duties ultimately make that position a policymaking or confidential [position] cannot properly be submitted to a jury because it is a question of law.'" *Id.* (citing *Walker,* 272 F.3d at 1132).

Here, the material duties of the Vice President of Academic Affairs position are at issue. The pleadings do not contain any description of the duties and responsibilities of the Vice President of Academic Affairs. As such, we are unable to determine at this stage whether Plaintiff was a policymaker or confidential employee who would not be entitled to First Amendment protection. Viewing the facts in the light most favorable to Plaintiff, we find that Plaintiff has stated a plausible claim for relief for retaliation based on a theory of ratification under the First Amendment with respect to Plaintiff's employee status.

### iii. Qualified Immunity

Finally, Defendants argue that Plaintiff's fourth claim should be dismissed because Defendant Sheehan should be granted qualified immunity. Qualified immunity shields government officials from liability for the violation of an individual's federal constitutional rights. This grant of immunity is available to state or federal employees performing discretionary functions where their actions, even if later found to be unlawful, did not violate clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is immunity from suit, not merely from liability. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly vio-

late the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

With respect to a qualified immunity claim, the plaintiff has the burden of establishing that the right claimed was clearly established. *Baker v. Racansky,* 887 F.2d 183, 186 (9th Cir.1989). This District has found that "[f]or a constitutional right to be 'clearly established,' its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right at the time of his conduct. In other words, in light of pre-existing law the unlawfulness must be apparent." *Refai v. Lazaro,* 614 F.Supp.2d 1103 (D.Nev.2009) (internal citations omitted). Plaintiff has not cited any cases establishing a clear rule that a vice president of a college has a First Amendment right to criticize his college's president. Rather, the Ninth Circuit Court of Appeals has found that "[i]t is far from clearly established today ... that university professors have a First Amendment right to comment on faculty administrative matters without retaliation." *Hong v. Grant,* 403 Fed.Appx. 236 (9th Cir.2010). We therefore find that Defendant Sheehan is entitled to qualified immunity.

Even though Defendant Sheehan is entitled to qualified immunity, we pause to address an issue the parties neglected. Put simply, Defendant Sheehan can only claim qualified immunity in an action for damages; qualified immunity does not bar injunctive relief. *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir.1991) (quoting *Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518, 527 (9th Cir.1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief.")).

In American Fire, the Ninth Circuit concluded that none of the reasons for sup-

**1184**

porting qualified immunity applied in an action seeking only declaratory or injunctive relief. First, the court determined that the potential for an injunction would not likely deter an official from exercising his duties. *Id.* Second, the court doubted that anyone would shy away from public office on the chance that he would be subject to an injunction that limited the exercise of his authority. *Id.* Finally, the court recognized that an action for an injunction is against the government and not the individual defendant; in general, the government provides the legal representation and puts up the defense. *Id.*

Defendants' motion (# 18) to dismiss will therefore be denied insofar as Plaintiff's fourth claim seeks injunctive relief.

### D. Payment of Costs

Defendants ask the Court to dismiss Plaintiff's complaint, or, in the alternative, to stay the case, based on Plaintiff's failure to pay Defendants' costs in *Laguerre, Jowel v. Nevada System of Higher Education*, case number c:10–cv–00232–LRH–VPC, an earlier state court action that was removed to this District. In this prior case, United States District Judge Larry R. Hicks dismissed the same complaint filed in this action without prejudice for lack of proper service, and the court awarded costs to Defendants. (Case 3:10–cv–00232–LRH–VPC # 10.) Plaintiff asserts that Defendants have not sought a writ of execution or taken any steps to act on collecting on the cost judgment. (Resp. to MTD at 5 (# 19).) Where Defendants have not taken any steps to collect on a cost judgment, the Court will not step in to act as their collection agent. We therefore decline to dismiss Plaintiff's complaint or to stay the case based on Plaintiff's failure to pay Defendants' costs in the prior action.

### IV. Conclusion

Plaintiff's first and second claims for breach of contract do not survive the pres-

ent motion to dismiss because Plaintiff does not allege facts sufficient to permit the inference that a contract existed. Plaintiff's fourth claim alleging First Amendment retaliation survives the present motion to dismiss to the extent it seeks injunctive relief, as we have found that Defendant Sheehan is entitled to qualified immunity. Finally, we decline to dismiss Plaintiff's complaint or to stay the case based on Plaintiff's failure to pay Defendants' costs in the prior action.

**IT IS, THEREFORE, HEREBY ORDERED THAT** Defendants' motion to dismiss (# 18) is **GRANTED** in part and **DENIED** in part on the following basis: Plaintiff's first and second claims are dismissed. Plaintiff's fourth claim survives this motion to dismiss to the extent that it seeks injunctive relief. We decline to dismiss Plaintiff's complaint or to stay the case based on Plaintiff's failure to pay Defendants' costs in the prior action.