Islet Scis., Inc. v. Brighthaven Ventures, LLC, 2017 NCBC 4.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 16388

ISLET SCIENCES, INC. )
          Plaintiff, )
)
v. )
)
)
)
BRIGHTHAVEN VENTURES, LLC, )
JAMES GREEN, WILLIAM WILKISON, )
OFSINK LLC, and DARREN OFSINK, )
          Defendants, )
)
and )
)
BRIGHTHAVEN VENTURES LLC, )
          Third-Party Plaintiff, )
)
v. )
)
JOHN F. STEEL, IV, EDWARD T. )
GIBSTEIN, and COVA CAPITAL )
PARTNERS, LLC, )
          Third-Party Defendants.)

OPINION AND ORDER ON
GREEN AND WILKISON'S
MOTIONS

THIS MATTER comes before the Court on Defendants James Green and William Wilkison's Motion for Judgment on the Pleadings ("Motion for Judgment") pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)") and their Motion to Dismiss First Amended Complaint ("Motion to Dismiss Amended Complaint") pursuant to Rule 12(b)(6) (collectively "Motions").

THE COURT, having considered the Motions, the briefs in support of and in opposition to the Motions, the oral arguments of counsel presented at the hearing, and other appropriate matters of record, concludes that the Motion for Judgment

should be GRANTED, in part, and DENIED, in part, and the Motion to Dismiss Amended Complaint should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

*McGuireWoods LLP by Michael F. Easley, Jr, Esq., Irving M. Brenner, Esq., Michael L Simes, Esq., for Plaintiff Islet Sciences, Inc and for Third-Party Defendants John F. Steel, IV, Edward T. Gibstein, and COVA Capital Partners, LLC.*

*Parry Tyndall White by K. Allan Parry, Esq., for Defendants James Green and William Wilkison.*

*Jerry Meek, PLLC by Gerald F. Meek, Esq. for Defendant Brighthaven Ventures, LLC.*

*Young Moore and Henderson, P.A. by Walter E. Brock, Jr., Esq. for Defendants Offsink LLC and Darren Offsink.*

McGuire, Judge.

FACTUAL AND PROCEDURAL BACKGROUND

1. The Court does not make findings of fact on a motion for judgment on the pleadings; rather, "[a]ll allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at trial, are deemed admitted by the movant for the purposes of the motion." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

2. Plaintiff Islet Sciences, Inc. ("Islet" or "Plaintiff") is a public corporation organized and existing under the laws of the State of Nevada with its headquarters in Raleigh, North Carolina. Islet is in the business of developing and commercializing new medicines and technologies to treat patients suffering from metabolic disease.

3. Defendant Brighthaven Ventures, LLC ("BHV") is a privately-owned pharmaceutical research and development company headquartered in Raleigh, North Carolina. BHV develops pharmaceutical products to treat obesity-related health complications. Defendants James Green ("Green") and William Wilkison ("Wilkison") own BHV.

4. At all times relevant to this lawsuit, BHV was developing the SGLT2 inhibitor remoglifozin etzbonate ("Remo") to treat type 2 diabetes and nonalcoholic steatohepatitis. At the time the complaint was filed, Remo was in phase IIb clinical development. In or about 2010, BHV entered into a licensing agreement with Kissei Pharmaceuticals ("Kissei"), the original creator and developer of Remo, for exclusive worldwide rights to Remo excluding the territory of Japan ("Kissei License"). The Kissei License required BHV to pay "'milestone' payments based on the progress of Remo through the various clinical stages," equaling approximately $67,500,000. (Am. Compl. ¶ 14.)

5. On or around September 2013, Islet, through its investment banker COVA Capital Partners ("COVA") and its principal and CEO Edward Gibstein ("Gibstein"), approached Green and Wilkison about joining Islet's management team and about Islet and BHV jointly developing Remo. On October 25, 2013, Islet's board appointed Green as CEO and Wilkison as COO of Islet. On October 30, 2013, Islet executed written Employment Agreements with Green and Wilkison ("Employment Agreements").

6. Islet and BHV thereafter negotiated the terms of a license for Remo from BHV to Islet. Plaintiff alleges that "[b]ecause Green and Wilkison were both officers of Islet and joint owners of BHV, they were negotiating on both sides of the transaction" and "committ[ed] Islet to terms that were favorable to the defendants and directly against Islet's interests." (*Id.* ¶ 19.)

7. On January 25, 2014, COVA suggested to Islet's board of directors that Islet acquire BHV instead of licensing Remo from BHV. Subsequently, the parties discussed Islet's acquisition of BHV in exchange for an "upfront minority share grant plus additional milestone payments related to Remo's development" to be paid to Green and Wilkison. (*Id.* ¶ 22.) During the same period, Green negotiated a reduction of the amount of the milestone payments to be made by BHV to Kissei from $67,500,000 to $25,000,000. (*Id.* ¶¶ 23–25.) Plaintiff alleges that the more than $40 million in payment reductions should have inured to the benefit of Islet, but Green and Wilkison subsequently engaged in "self-dealing" to "steal the benefit" of reduced milestone payments for the benefit of Green, Wilkison, and BHV. (*Id.* ¶ 26.)

8. On or about February 9, 2014, the parties agreed on the "key terms" of a merger pursuant to which Islet was to acquire a 100% membership interest in BHV "in exchange for Islet issuing 30 million shares of Islet common stock to Green and Wilkison and the potential for up to $71 million of additional purchase price payments based on the achievement of certain milestones." (*Id.* ¶ 27.) Plaintiff alleges that the decision as to whether the milestone payments would be made in cash or in

shares of Islet stock was to be made exclusively by the Islet board of directors. (*Id.* ¶ 31.)

9.      Islet was in need of capital, so on or about February 11, 2014, Green and Wilkison, along with Gibstein, met with Richard Schoninger ("Schoninger") to solicit investments from Schoninger and others. Schoninger agreed to invest $1 million in Islet in exchange for Green's and Wilkison's agreement to sell BHV to Islet on the terms described above. In exchange for his $1 million, Schoninger received 4 million common shares of Islet common stock. Plaintiff alleges that "Green and Wilkison diverted some or all of [Schoninger's investment] to the benefit of [ ] BHV in violation of their fiduciary duties to Islet and its shareholders." (*Id.* ¶ 34.)

10.     On March 7, 2014 Islet's board was presented with a letter of intent to merge with BHV that contained terms that were "materially different" from the terms that Green and Wilkison had agreed to with Schoninger and COVA, and more favorable to Green and Wilkison. For example, the letter of intent removed Islet's discretion to make milestone payments to Green and Wilkison in cash and required Islet to make the payments in shares of Islet stock. The letter of intent also changed the method of valuing the stock to one much more favorable to Green and Wilkison. Plaintiff alleges that "Green and Wilkison . . . made the changes to the merger structure in order to benefit themselves at the expense of Islet and its [ ] shareholders." (*Id.* ¶ 37.) Plaintiff also alleges that Green and Wilkison delayed the public disclosure of the new merger terms until after Schoninger and other investors

signed their subscription agreements and made their investments in Islet on March 10, 2014. (*Id.* ¶ 44.)

11. A year later, on March 9, 2015, Islet terminated the merger agreement with BHV. Instead, Green and Wilkison "forced" Islet to execute a licensing agreement with BHV for the rights to Remo that required an upfront payment of $5 million from Islet to Green and Wilkison, $112 million in additional milestone payments, royalties on net sales, a forced minimum capital raise of $10 million, and the exclusion of the territories of Latin America and Asia. (*Id.* ¶¶ 57–58.) Subsequently, some of the directors who voted in favor of terminating the merger agreement expressed concerns that Green and Wilkison had conflicts of interest in entering into the licensing agreement, and several members of the board of directors resigned. After the resignations, Green and Wilkison entered Islet into a bridge financing transaction that increased Islet's debt. The value of Islet's stock dropped significantly throughout this period.

12. Plaintiff also alleges that during their tenure as officers and directors of Islet, Green and Wilkison diverted Islet funds for the benefit of BHV, including obligating Islet to a lease it was unable to pay, failing to pursue valuable assets for Islet, missing payments of licensing obligations, and failing to maintain Islet's compliance with federal securities regulations. (*Id.* ¶¶ 47–51.)

13. In June, 2015, Islet's shareholders filed a petition in the Nevada District Court for Clark County, Nevada, asking the court to compel Islet to call a shareholders meeting to elect a board of directors. The Court subsequently issued an

order granting a writ of mandamus, compelling a shareholders meeting to elect directors. (*Id.* ¶¶ 75–77.) The shareholders meeting was set for September 3, 2015.

14. On July 23, 2015, Green and Wilkison resigned as officers of Islet, but maintained their positions as directors.

15. On August 25, 2015, Islet entered into written release agreements with Green and Wilkison. (*Id.* ¶ 87; Green and Wilkison's Answer & Countercl., Exs. A and B, "Executive Releases"). In relevant part, these Executive Releases provided as follows:

> In lieu of payment of the Separation Benefits, which the Company represents that it is presently unable to pay to Executive, and in consideration of the release . . . the Company . . . releases, waives, and discharges Executive . . . from all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs, expenses, damages, actions, and causes of action, whether in law or equity, whether known or unknown, suspected or unsuspected, arising from Executive's employment, termination from employment with Company and/or service on the Company's board of directors. . . .

(Executive Releases ¶ 2.) The Executive Releases were signed for Islet by directors Antonio O'Ferral and James Snapper.

16. Plaintiff alleges that Green and Wilkison "used their positions on the board of directors to have fellow directors—all of whom knew that they were about to be removed as Islet directors—expressly insulate Green and Wilkison from liability" by executing the Executive Releases. (Am. Compl. ¶ 87). On or about September 24, 2015, Islet shareholders removed Green, Wilkison, Snapper, and O'Ferral as directors by written consent.

17. On December 11, 2015, Plaintiff initiated this lawsuit by filing a Complaint. On December 14, 2015, this case was designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases by Order of Chief Judge James L. Gale on December 14, 2015.

18. On February 19, 2016, Green and Wilkison filed their Answer and Counterclaims. As counterclaims, Green and Wilkison allege that Plaintiff breached their respective Employment Agreements by, *inter alia*, refusing to advance them their legal fees and costs in defending this lawsuit and other lawsuits in which they are involved. Green and Wilkison also seek a declaratory judgment declaring that Islet is required to advance them attorneys' fees and costs and indemnify them under the Employment Agreements and Nevada law.

19. On February 19, 2016, Green and Wilkison also filed a Motion to Dismiss pursuant to Rule 12(b)(6), seeking dismissal of Plaintiff's claims against them.

20. On March 31, 2016, Plaintiff filed a motion for leave to amend the Complaint. On April 19, 2016, Plaintiff filed a Consent Motion to File Amended Complaint, and on April 20, 2016, the Court entered an Order granting Plaintiff leave to file its First Amended Complaint.

21.     In the First Amended Complaint, Plaintiff makes claims against Green and Wilkison for breach of fiduciary duty, constructive fraud, unjust enrichment, and for imposition of a constructive trust.

22.     On May 20, 2016, Green and Wilkison filed their Answer to the First Amended Complaint. By stipulation of the parties, Green and Wilkison's counterclaims, filed as part of their original Answer and Counterclaims, were incorporated by reference.

23.     On May 20, 2016, Green and Wilkison filed the Motion for Judgment. Green and Wilkison contend that Plaintiff's claims against them in this action are barred by the Executive Releases. They also seek judgment in their favor on their counterclaim for declaratory judgment. The Motion for Judgment was fully briefed, the Court has heard oral arguments, and it is now ripe for disposition.

24.     On May 20, 2016, Green and Wilkison also filed the Motion to Dismiss Amended Complaint seeking dismissal of this action on the grounds that Plaintiff has failed to allege sufficient facts to establish each cause of action. The Motion to Dismiss Amended Complaint was fully briefed, the court has heard arguments, and it is now ripe for disposition.

ANALYSIS

25.     "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137,

209 S.E.2d 494, 499 (1974). "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]" *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3, 745 S.E.2d 316, 319 (2013) (citation omitted). The Court may only consider "the pleadings and exhibits which are attached and incorporated into the pleadings." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant . . . ." *Id*. Thus, a Rule 12(c) motion for judgment on the pleadings should be denied "unless it is clear that plaintiff is not entitled to any relief under any statement of the facts." *Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC LEXIS 5, at *8 (N.C. Super. Ct. 1999).

26.     When ruling on a Rule 12(b)(6) motion to dismiss, the Court must determine "whether the complaint when liberally construed states a claim . . . upon which relief can be granted on any theory." *Benton v. W. H. Weaver Constr. Co.*, 28 N.C. App. 91, 95, 220 S.E.2d 417, 420 (1975). Such a motion should be granted only: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good

claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). The Court treats the well-pleaded allegations in a complaint as true and admitted in analyzing a Rule 12(b)(6) motion to dismiss. *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). While facts and permissible inferences set forth in the complaint are analyzed in a light most favorable to the plaintiff, un-warranted conclusions of law or deductions of fact will not be deemed admitted. *Sutton*, 277 N.C. at 98, 176 S.E.2d at 163; *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). "The general standard for civil pleadings in North Carolina is notice pleading. Pleadings should be construed liberally and are sufficient if they give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial." *Radcliffe v. Avenel Homeowners Ass'n*, 789 S.E.2d 893, 913, 2016 N.C. App. LEXIS 824, *52 (2016) (citation omitted).

27.     "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion[.]" *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). The trial court may reject allegations in the complaint that are contradicted by the incorporated documents. *Id.* at 265, 672 S.E.2d at 553.

28.     The Court will first address Green and Wilkison's Motion for Judgment, and then the Motion to Dismiss Amended Complaint.

### Motion for Judgment

*A. Issues of Fact Preclude Judgment based on Executive Releases.*

29.   Green and Wilkison contend they are entitled to judgment on the pleadings because Plaintiff's claims against them are barred by the Executive Releases. The Amended Complaint expressly references the Executive Releases, and Green and Wilkison attached copies of the agreements to their Amended Answer. Accordingly, the Court can consider the question on a motion under Rule 12(c). *See Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 546, 676 S.E.2d 481, 486 (2009) (trial court appropriately considered a document attached to defendant's answer in ruling on defendant's motion for judgment on the pleadings, when the plaintiff's complaint made clear reference to the events memorialized in that document).

30.   Green and Wilkison contend that the releases are "unambiguous" and "clearly broad enough to encompass all claims asserted by Islet against Green and Wilkison in this action." (Green and Wilkison Mem. Supp. Mot. Partial Judgment 5.) Plaintiff does not make any counter argument or contend that the releases, if enforceable, would not cover the claims raised in this action against Green and Wilkison. Instead, Plaintiff contends that (1) Snapper and O'Ferral were not disinterested directors under Nevada law, and (2) that there are facts in dispute as to whether the releases were considered by Islet's board at a meeting that was "properly convened." (Pl.'s Mem. Opp. Mot. Partial Judgment 4–6.)[1]

---

[1] Both parties contend that the law of Nevada applies to the question of whether Snapper and O'Ferral were disinterested directors for purposes of entering into the Executive Releases

31.     Green and Wilkison argue that the Executive Releases are valid because they were entered into on behalf of Islet by allegedly "disinterested" directors, Snapper and O'Ferral. (Green and Wilkison Mem. Supp. Mot. Partial Judgment 6–7.) Green and Wilkison further contend that "Nevada law is clear that a contract is not void or voidable simply because it is between a corporation and one or more of its directors, even if the interested director is present when the contract is authorized, provided that the fact of the director's interest is known to the disinterested directors who approve the contract in good faith," and that Plaintiff's allegation that Snapper and O'Ferral "knew that they were about to be removed as Islet directors" is not sufficient to invalidate the releases. (*Id.* at 7, citing Nev. Rev. Stat. § 78.140.)

32.     In this case, however, the pleadings establish that there is a dispute of fact regarding whether Snapper and O'Ferral were disinterested directors.  In the Amended Complaint, Plaintiff alleges that Green and Wilkison "used their positions on the board of directors to have fellow directors" enter into the Executive Releases, and that the Executive Releases are "evidence of the transparent bad faith with which [ ] Green and Wilkison operated Islet. . . ." (Am. Compl. ¶ 87.) In their counterclaims Green and Wilkison allege, and Plaintiff in its answer to the counterclaim denies, that Snapper and O'Ferral were acting as "independent board members" when they entered into the Executive Releases with Green and Wilkison. (Green and Wilkison's Countercl. ¶ 15; Pl.'s Answer to Countercl. ¶ 15.). Viewed in the light most favorable to Plaintiff, there exist disputes of fact and the pleadings in this action do not support

with Green and Wilkison. (Pl.'s Mem. Opp. Mot. Partial Judgment 4–6; Green and Wilkison Mem. Supp. Mot. Partial Judgment 7.)

dismissal of Plaintiff's claims based upon the Executive Releases at this stage of the proceedings. Green and Wilkison's motion for judgment on the pleadings seeking dismissal of Plaintiff's claims should be DENIED.

*B. Declaratory Judgment.*

33.    Green and Wilkison also seek judgment in their favor on their counterclaim for a declaratory judgment that "with regard to the Schoninger Complaint, the COVA Complaint[2] and this action: (i) Green and Wilkison are entitled to indemnification and advancement under Nevada law; (ii) Green and Wilkison are entitled to indemnification and advancement under the Islet by-laws and/or other corporate organizational documents; (iii) Green and Wilkison are entitled to indemnification and advancement under the Employment Agreements; and/or (iv) Green and Wilkison are entitled to indemnification and advancement under the Termination Agreement." (Green and Wilkison's Countercl. ¶ 36.)

34.    Under the Uniform Declaratory Judgment Act, G.S. §§ 1-253 through 1-267, a court has the power to "declare rights, status, and other legal relations, whether or not further relief is or could be claimed." G.S. § 1-253. Section 1-254 expressly provides that "[a]ny person . . . whose rights, status, or other legal relations

---

[2] In Paragraph 22 of their counterclaims, Green and Wilkison identify the lawsuits, other than this action, in which they seek advancement and indemnification as "(i) a Complaint filed on March 24, 2015 and styled *Richard Schoninger, Jacqueline Schoninger, Scott Schoninger, Gerald Allen and COVA Capital Partners, LLC v. James Green and William Wilkison*, 15 CV 2233, United States District Court for the Southern District of New York (the "Schoninger Complaint"); and (ii) a Complaint filed on August 28, 2015 and styled *COVA Capital Partners, LLC v. James Green, William Wilkison, James Snapper, Antonio O'Ferral, Larry Hutchison, and Islet Sciences, Inc.*, 15 CV 06834, in the United States District Court for the Southern District of New York (the "COVA Complaint")."

are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." The complaint must demonstrate the existence of an actual controversy. *Wendell v. Long*, 107 N.C. App. 80, 82, 418 S.E.2d 825, 826 (1992).

35. Under Nevada law,[3] a corporation has discretion to

> indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding . . . by reason of the fact that the person is or was a director, officer, employee or agent of the corporation . . . against expenses, including attorneys' fees . . . actually and reasonably incurred by the person in connection with the action, suit or proceeding if the person: (a) Is not liable pursuant to NRS 78.138; or (b) Acted in good faith and in a manner in which he or she reasonably believed to be in or not opposed to the best interests of the corporation . . . .

Nev. Rev. Stat. § 78.7502(1). The corporation has the same discretion to provide indemnification even where, as here, the director or officer is defending an action "by or in the right of the corporation to procure a judgment in its favor." *Id.* § 78.7502(2). This indemnification is permitted by law except where the person seeking indemnification "has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable to the corporation." *Id.*

---

[3] Green and Wilkison cite Nevada law in support of their claim for a declaratory judgment that they are entitled to advancement and indemnification. Plaintiff makes no argument regarding the declaratory judgment claim. The Court concludes that an officer's or director's right to indemnification is a matter of corporate governance to which Nevada's laws, as the state of Islet's incorporation, should apply. *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680–81, 657 S.E.2d 55, 62–63 (2008) ("States normally look to the State of a business' [*sic*] incorporation for the law that provides the relevant corporate governance general standard of care," quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 224 (1997)).

36.     The statute further provides that discretionary indemnification may be made "only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances," which determination is made by the company's stockholders, board of directors or independent legal counsel. *Id.* § 78.751(1). That threshold determination, however, is not required if indemnification is "advanced pursuant to subsection 2" of the statute. That sub-section provides as follows with regard to the type of advancement that is permitted under Nevada law:

> The articles of incorporation, the bylaws or an agreement made by the corporation may provide that the expenses of officers and directors incurred in defending a civil or criminal action, suit or proceeding must be paid by the corporation as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that the director or officer is not entitled to be indemnified by the corporation.

*Id.* § 78.751(2). This statute further provides that the director or officer's right to advancement as authorized by law pursuant to this section "[c]ontinues for a person who has ceased to be a director, officer, employee or agent." *Id.* § 78.751(3)(b).

37.     Under Nevada law, directors and officers are entitled to advancement of defense costs, even in actions brought against them by or on behalf of the corporation, with no precondition other than the statutory requirement that they agree to repay any costs if it is later established, by final adjudication, that they are not entitled to indemnification. *See, e.g., Envirokare Tech, Inc. v. Pappas*, 420 F. Supp.2d 291, 295 (S.D.N.Y. 2006) (granting CEO's motion for partial summary judgment on cost of

defense counterclaim against Nevada corporation that sued CEO for breach of fiduciary duty); *Orion Ethanol, Inc. v. Evans*, 2009 U.S. Dist. LEXIS 65555, *8–9 (D. Kan. 2009) (granting summary judgment and requiring advancement of defense costs from Nevada corporation and pointing out that Nevada law makes a clear distinction between indemnification and advancement of defense costs and provides no precondition for the latter other than execution of a signed undertaking).

38.    The Employment Agreements provide, in relevant part, as follows:

> The Company and each of its subsidiaries shall, to the maximum extent provided under applicable law, indemnify and hold Executive harmless from and against any expenses, including reasonable attorney's fees, judgments, fines, settlements and other legally permissible amounts ("Losses") incurred in connection with any proceeding arising out of, or related to, Executive's employment by the Company, other than any such Losses incurred as a result of Executive's negligence or willful misconduct. The Company shall, or shall cause a third party to, advance to Executive any expenses, including attorney's fees and costs of settlement, incurred in defending any such proceeding to the maximum extent required by applicable law.

(Employment Agreements ¶ 11.1.)

39.    In its Memorandum in Opposition, Plaintiff made no argument in opposition to Green and Wilkison's motion for judgment on the pleadings regarding the counterclaim for declaratory judgment, but claimed that it would request coverage for Green and Wilkison from Islet's insurance carrier. (Pl.'s Mem. Opp. Mot. Partial Judgment 2, n.1.) Plaintiff's counsel reiterated this claim at the hearing, but added that if coverage was declined, Plaintiff would not have sufficient cash to

provide the advancement. Green and Wilkison correctly point out that such claimed inability to pay does not excuse Islet's obligation to make the advancement.

40. The terms of the Employment Agreements are unambiguous and require Islet to advance Green and Wilkison their attorneys' fees subject to their providing of an undertaking as required by statute, and subject to reimbursement upon a finding of negligence or willful misconduct. Green and Wilkison's motion for judgment on the pleadings seeking a declaratory judgment as requested in their counterclaims should be GRANTED.

## Motion to Dismiss Amended Complaint

### C. Breach of Fiduciary Duty.

41. Since Islet is a Nevada corporation, Nevada law applies to Plaintiff's claim for breach of fiduciary duty. Nev. Rev. Stat. § 78.015; *Bluebird*, 188 N.C. App. at 680, 657 S.E.2d at 63. Nevada law provides that "[d]irectors and officers shall exercise their powers in good faith and with a view to the interests of the corporation." Nev. Rev. Stat. § 78.138(1). "Pursuant to Nev. Rev. Stat. § 78.138(7), to show that a director breached his or her fiduciary duty, a shareholder must prove that the director's act or failure to act constituted a breach of his or her fiduciary duties and that the breach of those duties involved intentional misconduct, fraud, or a knowing violation of the law." *Kahn v. Dodds* (*In re AMERCO Derivative Litig.*), 127 Nev. 196, 223, 252 P.3d 681, 700 (2011); *see also Morefield v. Bailey*, 959 F. Supp. 2d 887, 903 (E.D. Va. 2013) (claim for breach of fiduciary duty against corporate officer or director

under Nevada law requires allegations of "intentional misconduct, fraud, or knowing violation of the law.").[4]

42.     Green and Wilkison served as directors and officers of Islet at all times relevant to this claim and owed a fiduciary duty to Islet and its shareholders. Nev. Rev. Stat. § 78.138(1); *In re AMERCO*, 127 Nev. at 223, 252 P.3d at 700–01.

43.     Plaintiff has alleged, in some detail, that Green and Wilkison engaged in self-dealing and other intentional misconduct in breach of their fiduciary duties to Islet including: (1) taking the benefits of the reduced milestone payments negotiated with Kissei for themselves and BHV (Am. Compl. ¶¶ 24–26); (2) diverting to BHV "some or all" of the $1 million investment raised from Schoninger (*Id.* ¶¶ 32–34); (3) unilaterally changing the terms of the Islet–BHV merger (*Id.* ¶¶ 36–39); (4) usurping other Islet corporate opportunities and diverting Islet funds to BHV (*Id.* ¶¶ 45–47); (5) negotiating the termination of the merger "with . . . themselves" on terms highly unfavorable to Islet (*Id.* ¶¶ 55–59); and, (6) incurring $200,000 in debt for Islet but diverting those funds to the benefit of themselves. (*Id.* ¶¶ 66–68.) Plaintiff also alleges that "[t]he actions taken by these Defendants were intentional, with aggravating factors that entitle Islet to punitive damages, including willful and wanton conduct [and] [a]t all times, Defendants knew that their actions could irreparably damage [Islet] and its shareholders." (*Id.* ¶ 95.) The Court finds that these statements are

---

[4] To the extent a plaintiff alleges fraudulent conduct in support of a claim for breach of fiduciary duty, such allegations must be stated "with particularity" as required by the applicable pleading requirements. *In re AMERCO*, 127 Nev. at 223, 252 P.3d at 700 (Nevada Rule of Civil Procedure 9(b)); *Morefield*, 959 F. Supp. 2d at 903 (Federal Rule of Civil Procedure 9(b)). Accordingly, to the extent Plaintiff alleges that Green's and Wilkison's conduct was fraudulent, it must plead those allegations with particularity under Rule 9(b).

more than conclusory in nature and are sufficiently specific to support a claim for breach of fiduciary duty. *See In re AMERCO*, 127 Nev. at 223, 252 P.3d at 700 ("[Plaintiffs'] first and second causes of action in the amended complaint contained allegations that [defendants] breached the fiduciary duty of loyalty by self-dealing and usurping corporate opportunities[.]"). Accordingly, Green and Wilkison's motion to dismiss Plaintiff's claim for breach of fiduciary duty should be DENIED.

## D. Constructive Fraud.

44. The parties do not expressly address the question of whether Nevada or North Carolina law applies to Plaintiff's claim for constructive fraud. For purposes of determining the Motion to Dismiss Amended Complaint, however, the Court need not decide this issue since both Nevada and North Carolina recognize such a claim and both require the existence of a confidential (fiduciary) relationship between the parties and breach of that relationship by the defendant. *Perry v. Jordan*, 900 P.2d 335, 337, 111 Nev. 943, 946–47 (1995) ("Constructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential relationship."); *Watts v. Cumberland Cty. Hosp. Sys., Inc.*, 317 N.C. 110, 115–16, 343 S.E.2d 879, 884 (1986) ("Constructive fraud arises where a confidential or fiduciary relationship exists[.]")

45. The Court already has concluded that Green and Wilkison owed Islet a fiduciary duty and that Plaintiff has alleged sufficient facts to support a breach of fiduciary duty. In addition, Plaintiff has adequately alleged that Green and Wilkison sought to benefit themselves by their misconduct and caused injury to Islet. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) ("The

primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself."). Accordingly, Green and Wilkison's motion to dismiss Plaintiff's claim for constructive fraud should be DENIED.

*E. Unjust Enrichment.*

46. As a Sixth Cause of Action, Plaintiff alleges that "BHV, Green, and Wilkison unjustly enriched themselves by negotiating agreements, purportedly on behalf of Islet, that served to benefit the Defendants' personal pecuniary interests" and "resulted in substantial benefits to [ ] BHV." (Am. Compl. ¶¶ 120–21.) The Court has dismissed Plaintiff's unjust enrichment claim against BHV in its Opinion and Order on Brighthaven Ventures, LLC's Motion to Dismiss issued contemporaneously with this Opinion and Order, and for the same reasons concludes that the claim for unjust enrichment against Green and Wilkison should be dismissed.

47. Accordingly, Green and Wilkison's motion to dismiss Plaintiff's claim for unjust enrichment should be GRANTED.

*F. Constructive Trust.*

48. As a Seventh Cause of Action, Plaintiff has requested that the Court impose a constructive trust "with respect to any transfer of funds, assets, benefits, corporate opportunities, or property from Plaintiff, as well as any benefits received by Defendants in the past or on a going forward bases. . . ." (Am. Compl. ¶ 127.)

49. A constructive trust is an equitable remedy. "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal

title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Cline v. Cline*, 297 N.C. 336, 343–44, 255 S.E.2d 399, 404 (1979). "[A] constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation— in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22, 256 S.E.2d 793, 795–96 (1979), *superseded by statute on other grounds* (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14, 84 S.E.2d 289, 292 (1954)). A constructive trust "arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust. . . ." *Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 87 (1938).

50.     The Court has denied the motions to dismiss Plaintiff's claims for breach of fiduciary duty and constructive fraud, and the remedy of a constructive trust remains available to Plaintiff. Accordingly, Green and Wilkison's motion to dismiss Plaintiff's claim for constructive trust should be DENIED.

THEREFORE, IT IS ORDERED that:

51.     Green and Wilkison's Motion for Judgment as to Plaintiff's claims for breach of fiduciary duty, constructive fraud, unjust enrichment and constructive trust is DENIED.

52.	Green and Wilkison's Motion for Judgment as to Green and Wilkison's counterclaim for declaratory judgment regarding Islet's duty to advance defense costs is GRANTED.

53.	Green and Wilkison's Motion to Dismiss Amended Complaint as to Plaintiff's claims for breach of fiduciary duty, constructive fraud, and constructive trust are DENIED.

54.	Green and Wilkison's Motion to Dismiss Amended Complaint as to Plaintiff's claim for unjust enrichment is GRANTED.

This the 12th day of January, 2017.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
 for Complex Business Cases